IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT MARK GINNERY,  )
 )
      Plaintiff,  )
 )
-vs-  )    Civil Action No. 12-230 - Erie
 )
CAROLYN W. COLVIN,[1]  )
COMMISSIONER OF SOCIAL SECURITY,  )
 )
      Defendant.  )

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Plaintiff has filed a Motion for Summary Judgment relating to the denial of his claim for a period of disability and disability insurance benefits as well as supplemental security income (Docket No 9). Plaintiff contends that the denial is not supported by substantial evidence of record and is contrary to law. The Defendant Commissioner of Social Security has filed a Cross Motion for Summary Judgment (Docket No. 11), urging that the denial be affirmed. After careful consideration of the parties' submissions, and based upon the reasons set forth in my Opinion, the Defendant's Motion for Summary Judgment (Docket No. 11) is denied and the Plaintiff's Motion (Docket No. 9) is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

### I. BACKGROUND

Plaintiff Robert Ginnery was born on May 20, 1959 and was 48 years old on the alleged disability onset date of November 1, 2007. (R. 11, 43, 213). He was 51 years old at the date of

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

1

the hearing. (R. 34). He obtained an eighth grade education and his work history consists largely of part-time work at places such as McDonald's, Holiday Inn, a BP gas station and a Shell gas station. (R. 34-37). He worked as a grill cook and a cashier. (R. 34-37). Ginnery reports that he attends church once a week. (R. 46). He lives alone but spends time with a long-time girlfriend. (R. 382). He does not have a driver's license and relies on others for transportation. (R. 383). He does not take the bus. (R. 383). He does light house cleaning, does his own laundry, pays his own bills and does his own shopping. He is able to dress and feed himself. (R. 383).

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound

by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See*, 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he/she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745

3

F.2d 210, 221 (3d Cir. 1984).

### B. WHETHER THE ALJ ERRED IN HIS FINDINGS REGARDING GINNERY'S MIGRAINES AND DEGENERATIVE DISC DISEASE

Ginnery initially claimed that severe migraines, cracked vertebrae, transient ischemic attack ("TIA"), depression, club foot and high cholesterol limit his ability to work. (R. 145). The ALJ determined that Ginnery's degenerative disc disease, chronic obstructive pulmonary disease ("COPD") and depression, in fact, constituted severe impairments but that none of these severe impairments precluded him from obtaining substantial gainful employment. Specifically, the ALJ determined, at the fifth step of the five step sequential analysis, that Ginnery had the residual functional capacity to perform light work, except that he was limited to unskilled jobs involving low stress, no changes, no production work and jobs that have little interaction with the public or co-workers. In addition, he found that Ginnery should be afforded the opportunity to sit for 30 minutes and stand for 30 minutes consistently and on an alternate basis 8 hours a day 5 days a week; should avoid heights, hazardous machines, and temperature extremes; should avoid pushing and pulling, and overhead reaching; and should avoid stairs, climbing ropes and ladders, odors, gases, and fumes. (R. 15).

On appeal, Ginnery finds errors with the ALJ's "assessment of migraine headaches" and "degenerative disc disease." See Docket No. 10, p. 11. For the sake of brevity then, I will limit my review of the medical evidence to the records pertaining to Ginnery's migraine headaches and his degenerative disc disease.

1. Migraines

Ginnery takes issue with the ALJ's conclusion that his migraine headaches are neither "severe" under the second step of the five step analysis, nor "disabling" such that they preclude him from substantial gainful employment at the fifth step of the analysis. As far as Ginnery's first contention, it may be that the ALJ's decision at step two was erroneous, but even if it was,

such error was harmless because the ALJ found that Ginnery suffered from several other impairments which did qualify as "severe." *See Salles v. Commissioner of Social Security*, 229 Appx. 140, 145 n.2 (stating that, "[b]ecause the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), *citing, Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). *See also, Roberts v. Astrue*, Civil No. 8-625, 2009 U.S. Dist. LEXIS 91559 at *15 (W.D. Pa. Sept. 30, 2009) (finding that, "[e]ven assuming that the ALJ failed to include all of Plaintiff's severe impairments at step two, this would be harmless error, as the ALJ did not make his disability determination at this step. Indeed, remand would not affect the outcome of this case and is not warranted."); *Bliss v. Astrue*, Civil No. 8-980, 2009 U.S. Dist. LEXIS 12172 (W.D. Pa. February 18, 2009) (stating that "as long as a claim is not denied at step two, it is not generally necessary for the ALJ to have specifically found any additional alleged impairments to be severe. ... Since Plaintiff's claim was not denied at step two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's neuropathy and sleep apnea to be non-severe.")

I reach a different conclusion, however, with respect to Ginnery's contention that the ALJ erred in concluding, at step five that his migraines were not of such severity as to preclude him from substantial gainful activity. Ginnery's argument rests primarily upon his beliefs that the ALJ's assessment of the medical evidence regarding migraines "is egregiously improper" and that the ALJ failed to accord proper weight to Ginnery's treating physician's opinion regarding the disabling nature of the migraines. Gary Pasqualicchio, D.O., served as Ginnery's treating physician for migraines.

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the

5

> treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Commissioner of Social Security Admin.*, No. 10-2517, 2010 WL 5078238 at * 5 (3d Cir. Dec. 14, 2010). To that end, the ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008). In the present case, I find the ALJ failed to meet this standard.

As stated above, Ginnery clearly argued that his migraines constituted a "severe impairment." The record is replete with references to Ginnery complaining of and being treated for migraine pain. Indeed, there are records dating back to June 14, 2006, December 2006, March 2007, July 17, 2007, September 11, 2007 and October 16, 2007. Further, on March 18, 2009 Ginnery was seen for migraines, complaining of them two to three times a month, and a rash on his forearm. (R. 418). Again, on July 14, 2009, Ginnery presented to the emergency room complaining of an onset of slurred speech and blurry vision followed by a migraine. (R. 358). He reported that although the symptoms were typical, the pain was more severe and not relieved by his medication. (R. 358). There is a report dated August 19, 2009 prepared by Byron Hillin, Ph.D. for evaluation through the Bureau of Disability Determination. (R. 380-388). Ginnery reported to Hillin that he suffered from migraines two to three times a week and that the migraines make it difficult for him to concentrate and require him to lie down and sleep. (R. 380). A September 14, 2009 record from the Erie Center on Health & Aging indicates that Ginnery presented for migraines but reported only suffering from them four times a month. (R. 408). Ginnery returned on October 8, 2009, stating that he was "feeling fine." (R. 503). The records

note that "[s]ymptoms controlled since last visit and on current medication," and "[e]xcruciating headache but the frequency is greatly reduced... ." (R. 503). Dr. Pasqualicchio's records note migraines again in February, March and June of 2010. (R. 477, 482 and 486). Ginnery complained in March, not of migraines, but of a runny nose, sore throat and cough. (R. 482). In June, Ginnery reports that "headaches are much better." (R. 477). In August of 2010 Ginnery complains of the frequency of the migraines (R. 473) but in October of 2010 reports that they occur one to two times a month. (R. 464). On January 24, 2011, Dr. Pasqualicchio prescribed topomirate for the migraines going forward. (R. 450).

Significantly, the ALJ fails to discuss any of these records in any meaningful way. Rather, he makes a vague statement that "[t]he claimant has a history of migraines, which are treated with medication and may be related to a lack of glasses and caffeine intake." (R. 14). What the ALJ fails to note, however, is that the reference to "glasses" came from Ginnery himself who was thought he might need to have his vision checked. (R. 275). Further, treatment records indicate that migraines continued after Ginnery obtained glasses. (R. 273). The ALJ himself also noted that Ginnery "was let go after missing work secondary to migraine headaches." (R. 17). Indeed, the medical records suggest that Ginnery missed work and was fired from at least one job because of absences caused by migraines. (R. 258, R. 35, R. 37). Again, this information is not discussed by the ALJ.

Dr. Pasqualicchio also filled out several forms pertaining to the allegedly disabling nature of Ginnery's migraines. On a Pennsylvania Department of Public Welfare Employability Assessment Form, Dr. Pasqualicchio placed a checkmark in a box indicating that Ginnery was "permanently disabled." (R. 429-430). With respect to a diagnosis, Pasqualicchio referenced, in part, "migraines." (R. 430). In April of 2011, shortly before the administrative hearing, Dr. Pasqualicchio completed a check box form prepared by Ginnery's counsel. On that form, Pasqualicchio affirmed that Ginnery suffers from chronic migraines. (R. 560). He also affirmed

that "the migraine headaches result in Mr. Ginnery having a need to lie down at unpredictable times when he gets a migraine headache." (R. 560). Finally, Pasqualicchio affirmed that his opinions were "based upon observation and examination of the patient, pertinent findings, and review of treatment records." (R. 560).

The ALJ rejected both the form prepared by Ginnery's counsel and the assessment completed for the Department of Public Welfare. (R. 18-19). The ALJ faults both because they do not include objective testing, treatment records, further explanation or clarification. He explains that the standards utilized by State agencies and other welfare programs are different than the disability criteria used by the Social Security Administration. (R. 19). He also observes that "[t]here is no evidence that Dr. Pasualiccio, a family practitioner, has any training in the field of occupational or orthopedic medicine." (R. 19). As such, he describes them as "conclusory."

I agree with the ALJ that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Further, I recognize that a DPW form that is completed in order to obtain public assistance and does not contain any clinical findings is not particularly persuasive evidence. *See Schmidt v. Comm'r. of Soc. Sec.*, 465 Fed. Appx. 193 at * 9 (3d Cir. 2012), citing 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Yet, as detailed above, the record contains a multitude of reports relating to Ginnery's migraines, other than those two reports. The ALJ does not discuss them. Nor does the ALJ discuss Ginnery's testimony at the hearing regarding the frequency of his migraines or his alleged need to rest when they occur. The vocational expert testified that an individual who was unable to complete two or more regularly scheduled work days a month would not be able to sustain employment. (R. 55). The ALJ failed completely to address the vocational expert's testimony in light of the medical records pertaining to the migraines. These shortcomings mandate a remand with instructions to the ALJ for consideration of these records.

    2.    Degenerative Disc Disease

I do find, however, that the ALJ's conclusion regarding Ginnery's degenerative disc disease is supported by substantial evidence of record. Ginnery complains that the ALJ erred in giving "little weight" to Dr. Pasqualicchio's reports that Ginnery is disabled because those reports fail to include reference to any specific treatment records and fail to clarify how long Ginnery is able to sit or stand. See Docket No. [10], p. 21. As stated above, however, form reports are weak evidence at best. See Mason v. Shalala, 994 F.2d at 1065. Additionally, Ginnery faults the ALJ for making a "generic" conclusion that his severe impairment is "degenerative disc disease." See Docket No. [10], p. 21. According to Ginnery, "this generic designation fails to take into account that both the cervical and lumbar spines are affected." Id. Yet the ALJ does, in fact, reference the fact that Ginnery suffers from pain in both his neck and lower back. (R. 16). He similarly considered radiology reports of Ginnery's lumbar spine and cervical spine and the fact that Ginnery received both lumbar and cervical epidural injections. (R. 17). Therefore, I find unpersuasive the fact that the ALJ did not use the exact phrasing that Ginnery wanted in reaching his conclusion.

Moreover, substantial evidence of record does support the ALJ's conclusion that Ginnery's cervical and lumbar impairments, though severe, are not disabling. He received injection therapy for pain management from Melissa Jorden, D.O. (R. 508-31). The medical records indicate that Ginnery had "very good pain relief" from cervical epidural steroid injections (R. 509), that Ginnery reported "excellent improvement in pain levels following second cervical epidural steroid injection" (R. 513), that Ginnery experienced "good benefit from the lumbar epidural steroid injection (R. 517), and that Ginnery "has had a cervical epidural surgery injection in the past with excellent results." (R. 519). Significantly, following the beginning of the steroid injection treatment, Ginnery does not seem to have complained to Dr. Pasqualicchio of any neck or back pain. (R. 449 (treatment date of 2/28/11;Ginnery complaining of migraine); R. 450 (treatment date of 1/24/11; Ginnery complaining of headache and left shoulder pain); R.

9

460 (treatment date of 1/6/11; Ginnery complaining of chest congestion, runny nose, sneezing and dry cough); R. 464 (treatment date of 10/25/10; Ginnery presenting for recheck for hypotension); R. 473 (treatment date of 8/30/10; "Robert presents today follow up for stomach problems"); R. 477 (treatment date of 6/28/10; presenting for routine 3 month follow up and complaining of lumps on his stomach)). Additionally, there is no indication that Ginnery suffered any side effects from his medication or that any physician ever recommended that he have surgery. Finally, Dr. Abu Ali, a state agency physician, reviewed the evidence and concluded that Ginnery was not attending physical therapy, that he did not use a Tens unit, and that medications had been relatively effective in controlling his symptoms. (R. 347). As such, he found that Ginnery was capable of performing a limited range of light work. (R. 341-47).

Based upon a review of the record, I find that a remand on the basis of Ginnery's back and neck injuries is not warranted. It is clear from the opinion that the ALJ thoroughly considered the medical records and that his conclusion is supported by substantial evidence. Consequently, Ginnery's Motion for Summary Judgment is denied in this regard.2

---

2 Ginnery also argues that the ALJ's credibility assessment is suspect "[b]ecause the ALJ did not adequately consider the medical evidence in this case." See Docket No. [10,], p. 24. I reject this contention insofar as it relates to the medical evidence pertaining to Ginnery's neck and back impairments. As stated above, the ALJ's conclusion that Ginnery's neck and back impairments, though severe, were not so disabling as to prevent him from substantial gainful activity, was supported by substantial evidence of record. I am, however, remanding the case for further consideration with respect to the evidence regarding Ginnery's migraines. The ALJ should make credibility determinations regarding Ginnery's complaints of migraine pain, and how his activities of daily living and work history impact that credibility determination, in assessing such evidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT MARK GINNERY,            )
                                )
        Plaintiff,               )
                                )
    -vs-                         )     Civil Action No. 12-230 - Erie
                                )
CAROLYN W. COLVIN,[3]            )
COMMISSIONER OF SOCIAL SECURITY, )
                                )
        Defendant.               )

AMBROSE, Senior District Judge.

## ORDER OF COURT

THEREFORE, this 3rd day of February, 2014, it is ordered that the Defendant's Motion for Summary Judgment (Docket No. 11) is denied and Plaintiff's Motion for Summary Judgment (Docket No. 9) is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

BY THE COURT:

_Donetta W. Ambrose_
Donetta W. Ambrose
United States Senior District Judge

---

[3] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

11